UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

**07 CIV. 7080**

MARIBEL AYALA, DOMINICA L. O'NEILL,
RICHARD A. GUZMAN, and CESAR
CASTILLO,

                Plaintiffs,

07 Civ.   (   )

-against-

PHILIP AMICONE, individually,
EDMUND HARTNETT, individually,
JOHN A. LISZEWSKI, individually
CITY OF YONKERS, New York,
PAUL WOOD, individually, POLICE
OFFICERS JOHN DOE'S #1 to #20,
individually, and SANITATION WORKERS
#1 to #20,

                Defendants.

----------------------------------------------------------x

**COMPLAINT**

Jury Trial Demanded



Plaintiffs MARIBEL AYALA, DOMINICA L. O'NEILL, RICHARD A. GUZMAN and CESAR CASTILLO, by their attorneys Lovett & Gould, LLP, for their complaint respectfully state:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately the result of conduct jointly engaged in by the Defendants while acting under color of the laws of the State of New York, for violations of Plaintiffs' rights as guaranteed by reason of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiffs MARIBEL AYALA, DOMINICA L. O'NEILL, RICHARD A. GUZMAN, and CESAR CASTILLO are citizens of the United States, domiciliaries of the State of New York, and residents of the Northern Counties. At all times relevant to this complaint Plaintiffs were employed by The Guardian News, Inc., a New York domestic business corporation having its principal office for the conduct of business at 251 North Avenue, New Rochelle, New York. On a weekly basis the corporation publishes and disseminates, by *inter alia*, use of so-called newsracks, a free newspaper known as "The Westchester Guardian" (hereinafter "Guardian"). That publication focuses on and reports about amongst other things municipal corporate corruption in the incumbent administration of the City of Yonkers.

4. Defendant PHILIP AMICONE (hereinafter "Amicone"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected, incumbent Mayor of the Defendant City.

5. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed, incumbent Police Commissioner for the Defendant City.

6. Defendant JOHN A. LISZEWSKI (hereinafter "Liszewski"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed, incumbent Commissioner of Public Works for the Defendant City.

7. Defendant CITY OF YONKERS, New York (hereinafter "City"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

8. Defendants PAUL WOOD (hereinafter "Wood"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a sworn members of the City of Yonkers' Police Department.

9. POLICE OFFICERS JOHN DOE'S #1 to #20 and SANITATION WORKERS #1 to #20, each of whom is sued in his/her individual and personal capacities only, are sworn members of the City's Police Department and members of the City's Department of Public Works. Although their identities are presently unknown, their names will be ascertained during discovery at which time Plaintiff will seek leave of the Court to add their actual names to the complaint.

### THE FACTS

10. On the front page of the Guardian published July 5, 2007, the headline was: "Amicone Sells Out Families of Yonkers...Enbraces Giulio Cavallo; Brings in Nick Spano Mob". In that connection:

  a. A page "2" article referenced Amicone as a "Man Who Would: Take the endorsement of Nick Spano, a fallen, crooked politician, and create taxpayer-funded jobs for his mob; Bring Giulio Cavallo, a political prostitute who sells cross-endorsements for cash, into the election process; Run on a party line whose chairman, Zehy Jereis, is an election fraudster and a convicted drug dealer", and,

3

b. A page "4" editorial that, *inter alia*, expressed the following "Opinion": "Such has been the sordid tale of recent elections in Westchester, and particularly in the City of Yonkers. Given that history, we believe that the race for Mayor of Yonkers, pitting incumbent Republican Phil Amicone, and every undesirable political creature he can muster, against Independent Nader Sayegh, and Democrat Dennis Robertson, in a context that will require the utmost attention of the Voters' Rights Division of the Justice Department, and the provision of sufficient observers and enforcement personnel to protect the integrity of the outcome."

11. On the front page of the Guardian published the week of July 9, 2007, the headline read:

"A Tale of Two Cities", beneath which to the left was a photograph of the Mayor of Mount Vernon, New York (Ernie Davis), and beneath which to the right was a photograph of Amicone. The Davis photograph bore the legend: "DUMB". The Amicone photograph bore the legend: "DUMBER" (hereinafter collectively referred to as "DUMB & DUMBER") - - in connection with which readers were invited to "See In Our Opinion, p4".

12. In the editorial concerning the front page story, captioned "In Our Opinion . . .Sodom and Gomorrah", the Guardian expressed *inter alia* the following thoughts regarding Davis and Amicone:

> "We must sadly conclude that Davis and Amicone have each been abject failures, little more than caretakers, at best, not likely to improve the circumstances of the city they have been entrusted with, if placed back into their present positions. In short, we believe

Ernie Davis and Phil Amicone have not only squandered vast human and financial resources, but also the wonderful opportunity to bring about significant positive change.

Consider the fact that Mount Vernon and Yonkers are each under Federal Investigation...in connection with projects and programs involving huge sums of money...There's a distinct odor of fish somehow attached to these financial mysteries.

...As regards crime, there is no denying that street crime and gun violence in both Yonkers and Mount Vernon have been spiraling out of control under Amicone and Davis respectively. Additionally, the Yonkers Police Department has had, and continues to have, a well-deserved reputation for police brutality, a problem neither Phil Amicone nor Commissioner Hartnett have made any convincing effort to abate.

*           *           *

The decay and destruction of formerly strong, proud neighborhoods and public schools under Davis and Amicone has been the inevitable product of corrupt, uninspired administrations more concerned with satisfying and fattening political powerbrokers and criminal elements such as Giulio Cavallo, Zehy Jereis, Nicky Spano, Larry Schwartz, Reggie LaFayette, and their ilk...In short, we believe Ernie and Phil have been marching to the beat of the wrong drummer for quite some time, and are not likely to alter their cadence anytime soon."

13. Commencing during the week of July 9, 2207, and continuing thereafter, the owner of the Guardian and a number of Guardian employees including Plaintiffs repeatedly sought to distribute inside and/or outside Yonkers' City Hall:

    a. Copies of DUMB & DUMBER as contained in the Guardian

    b. Copies of the July 26, 2007, Guardian the front page headline of which reported: "Guardian Publisher Offers $25,000 Reward For Information Leading to the Arrest and Conviction of Westchester Public Officials and Politicians Who Have Broken the Law and Betrayed the Public Trust", and,

    c. Copies of the August 2, 2007, Guardian the front page headline of which read: "Phil Amicone A Huge Flop! Fails to Deal With Police Brutality. Sharpton Correctly Identifies Problem As <u>Not</u> Targeting Only the Minority Community".

14. In that connection pursuant to a coordinated action orchestrated by Amicone, Hartnett, Liszewsky, their co-defendants and numerous members of the City's Police and Public Works Departments, all copies of the Guardian were repeatedly confiscated and discarded by Defendants - - hateful conduct motivated in whole or in substantial respect by the substantive content of the Guardian concerning Amicone and the Yonkers Police.

15. Also in that connection and pursuant to the same coordinated action, Guardian newsracks were repeatedly confiscated and/or discarded by Defendants under the direction of Liszewski, action taken by similarly motivated hateful conduct.

16. As a further consequence of that coordinated action, Defendants repeatedly and daily targeted employees of The Guardian News, Inc.", as indicated *infra*, threatened them with arrest, and charged them criminally - - with the same motivation and the

objective of entirely stopping dissemination of the Guardian in and about City Hall and the City because of its substantive content.

17. By way of contrast publications favorable to Amicone and the City (such as "Yonkers City of Vision") were permitted by the Defendants to be dispensed from *inter alia*:

    a. A newsrack, located on a stairway in City Hall, and

    b. A counter at a security desk in City Hall as manned by a uniformed Police Officer.

18. Also by way of contrast, persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals:

    a. In the stairway newsrack referenced *supra*, and,

    b. On the security desk counter as referenced *supra*.

19. For the purpose of disseminating copies of the Guardian as referenced *supra* each of the Plaintiff was, amongst others, assigned by The Guardian News, Inc. to work in the City and at and about Yonkers' City Hall and in that connection to non-disruptively give to willing recipients, copies of the Guardian.

20. As a proximate result of Plaintiffs' conduct each was confronted by City Police Officers, including Wood and

    a. Ordered to cease distributing the Guardian on the supposed premise that its distribution was illegal in Yonkers,

    b. Issued criminal informations charging them with distributing the Guardian,

    b. Ordered to leave the premises,

    c. Threatened with arrest/incarcerate should they return to distribute the Guardian, and,

    d. Coerced to depart from the City by intimidation.

21. Under the premises Defendants' conduct has caused Plaintiffs: to be chilled in the exercise of their First Amendment rights as a consequence of which they will not prospectively distribute the Guardian in the City; emotional upset; public embarrassment; public humiliation; shame; impairment of their right to liberty to the extent they are required by the criminal informations to appear in Yonkers City Court under threat of issuance of a bench warrant; anxiety; punishment for exercising their right of free speech; selectively punished, in contrast to distributors of periodicals favorable to Amicone and the City; and otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

23. Under the premises Defendants violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

25. Under the premises Defendants violated Plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

a. Awarding against all Defendants such compensatory damages as the jury may determine,

b. Awarding against the individually named Defendants such punitive damages as the jury may impose,

c. Permanently enjoining Defendants from interfering with Plaintifs' distribution and/or dissemination of the Guardian within the City and/or City Hall,

d. Declaring that Defendants' conduct violated Plaintiffs' rights as guaranteed by the First and Fourteenth Amendments,

e. Awarding as against all Defendants reasonable attorney's fees and costs, and,

f. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
August 8, 2007

                                              LOVETT & GOULD, LLP
                                              Attorneys for Plaintiff
                                              By:_____
                                              Jonathan Lovett (4854)
                                              222 Bloomingdale Road
                                              White Plains, N.Y. 10605
                                              914-428-8401